# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SEAN WHITE, | ) |
| Plaintiff, | ) |
| | ) Case No. 19-cv-00582 |
| v. | ) |
| | ) Judge Jorge L. Alonso |
| FIDELITY BROKERAGE SERVICES, LLC, | ) Magistrate Judge Jeffrey Cole |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Defendant Fidelity Brokerage Services, LLC ("Fidelity") moves to dismiss Counts I through III of Plaintiff Sean White's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, Fidelity's motion to dismiss is denied [23].

## BACKGROUND

Plaintiff brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., after he allegedly endured racial, sexual, and religious discrimination while employed by Fidelity and was fired by Fidelity in retaliation for complaining about the same. (*See* Am. Compl. at ¶ 1, ECF No. 19.) Plaintiff is a white, Catholic male. (*Id*. at ¶ 16.) From February 2015 through September 2017, plaintiff worked for Fidelity at its branch in Orland Park, Illinois; plaintiff initially worked as a "financial representative" and then later as a "relationship manager." (*Id*. at ¶¶ 17, 20, 39.) Plaintiff's job duties included providing "customer service and operational support" for Fidelity's clients. (*Id.* at ¶ 19.)

Plaintiff alleges that, beginning in or around 2016 and lasting into 2017, he was "subjected to discrimination and harassment, based on his race, sex and religion," by his "non-White, non-

Catholic female sales supervisor" Sandra Bennett ("Bennett"). (*Id.* at ¶¶ 21, 29.)[1] This harassment included, but was not limited to, the following incidents:

> [1] repeated sexually explicit stories by Bennett of her and her husband being drunk and naked at home, engaged in sexual activity; [2] being asked by Bennett to look at her legs and asked if [plaintiff] found them 'sexy'; [3] Bennett explaining that her son was having issues because her husband had 'old sperm'; [4] offensive racial slurs by Bennett, including the repeated use of the word 'cracker'; [5] unwelcome comments about Hispanic people who struggled with speaking English and how they all need to go back to Mexico and learn English before coming here; [6] repeated questions about how [plaintiff] could be Catholic as Bennett said all Catholic priests are child predators.

(*Id.*) Plaintiff also alleges that in February 2017, Bennett learned plaintiff was dating a "black physician" and told plaintiff that "he could not handle a strong, independent black woman and that [plaintiff's] girlfriend should meet Bennett's son when things don't work out." (*Id*. at ¶ 30.)

As early as January 2016, plaintiff complained about Bennett's behavior to his manager, Gary Fusz ("Fusz"), who "indicated [Plainitff] was in a hostile work environment" and directed plaintiff to speak with Amy Keene, who worked in Human Resources at Fidelity. (*Id*. at ¶¶ 22-23.) Soon thereafter, Bennett was told about plaintiff's complaint and confronted plaintiff, telling him that "it was ridiculous he would stir up trouble like that for her" and that her son "wanted to find out who started all this trouble and beat their ass." (*Id*. at ¶27.) Plaintiff again reported Bennett's behavior to Fidelity management, but Fusz told him nothing could be done. (*Id*. at ¶¶ 28, 34.)

Thereafter, plaintiff was given the new job title of "Relationship Manager" at Fidelity but alleges that Fidelity "did not allow [him] to actually take on the new role of Relationship Manager presented as a promotion," and the more plaintiff complained, the more Fidelity diminished his duties and responsibilities. (*Id*. at ¶ 31-33.) Then, in September 2017, Fidelity fired plaintiff for

---

[1] Fidelity argues that Bennett was not technically plaintiff's manager, nor did Bennett have managerial authority over plaintiff. (*See* Def.'s Memo. in Support at 2, n. 2, ECF No. 24.) However, for purposes of deciding the motion to dismiss, the Court takes plaintiff's well-pleaded facts as true. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

allegedly violating company policy relating to a computer reimbursement program it offered its employees. (*Id*. at ¶¶ 36-39.) Plaintiff filed the instant suit in January 2019 and filed his First Amended Complaint in April 2019. The First Amended Complaint includes four claims brought under Title VII: (Count I) racial discrimination; (Count II) sexual discrimination; (Count III) religious discrimination; and (Count IV) retaliation. (*See generally id*.) Fidelity now moves to dismiss Counts I through III. (*See generally* Def.'s Mot. to Dismiss, ECF No. 23.)

## **LEGAL STANDARD**

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S.at 556). A plaintiff must plead enough details "to present a story that holds together…[b]ut the proper question to ask is still '*could* these things have happened, not *did* they happen.'" *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404-05 (7th Cir. 2010)) (citations omitted). The Court accepts "as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

**DISCUSSION**

Fidelity argues that two independent reasons warrant dismissal of Counts I through III. First, Fidelity argues that the "vast majority" of plaintiff's allegations supporting his claims are time-barred, and thus, the claims must be dismissed. (*See* ECF No. 24 at 1.) Second, Fidelity argues that plaintiff fails to state claims because plaintiff fails to allege he was harassed *because* of his race, gender, or religion and also fails to plausibly allege that the harassment was so severe or pervasive that it created a hostile work environment. (*See id.*) The Court addresses each argument in turn.

**I.  Timeliness**

Fidelity first argues Counts I through III should be dismissed because the underlying allegations are too old. For the most part,[2] the parties agree on the relevant time period which governs the issue. To bring a claim under Title VII, a plaintiff must exhaust his or her administrative remedies. *See Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1846-47 (2019). In the instant case, plaintiff was required to file his charge with the EEOC within three hundred days after the alleged unlawful employment practice occurred. 42 U.S.C.A. § 2000e-5(e)(1); *Boston v. U.S. Steel Corp.*, 816 F.3d 455, 463 (7th Cir. 2016). Plaintiff filed his EEOC charge on November 1, 2017. Thus, the 300-day window for plaintiff's claims began on January 5, 2017. Put another way, unless the unlawful employment practices that plaintiff complains of occurred sometime

---

[2] In arguing his claims are timely, plaintiff states a series of events between 2016 and September 21, 2017—the date of plaintiff's termination—constitute a single unlawful employment practice, and as such, any allegations made before July 18, 2018 are timely because they are within the 300-day statutory period for filing an EEOC charge. The Court need not address whether the alleged hostile work environment lasted through plaintiff's termination. Rather, because the Court finds there is at least one timely allegation that forms part of the alleged hostile work environment, that finding is sufficient to deny Fidelity's motion to dismiss based on timeliness.

4

between January 5, 2017 and November 1, 2017, plaintiff's claims are untimely and must be barred.

Fidelity argues that the "bulwark" of plaintiff's allegations occurred "in or around 2016," rendering these allegations untimely. Fidelity further argues these untimely allegations must be disregarded, and without them, plaintiff's claims cannot survive. (ECF No. 24 at 5-6.) Plaintiff responds by invoking the "continuing violation" doctrine. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). Plaintiff argues that the Court can and should consider any allegations that occurred prior to January 5, 2017 because, combined with his timely allegations, they constitute a single unlawful employment practice, i.e., a hostile work environment. (Pltf.'s Resp. at 3-5, ECF No. 31.) Fidelity replies that the continuing violation doctrine does not apply because the allegations plaintiff attempts to string together are too "infrequent and unrelated" to constitute a single unlawful employment practice. (Def.'s Reply at 6-7, ECF No. 32.)

First, despite Fidelity's characterization of the pleadings, it is not clear which allegations happened prior to January 5, 2017. Fidelity argues that almost all allegations regarding Bennett's harassment and the initial response by Fidelity management are untimely because they happened "in or around 2016." (ECF No. 24 at 5-6 (citing ECF No. 19 at ¶¶ 21-28).) But plaintiff actually alleges that Bennett harassed him "*[b]eginning* in or around 2016" and that "*as early* as January 2016," plaintiff reported Bennett's behavior to Fidelity. (*See id*. at ¶¶ 21-22.) Because the allegations Fidelity attacks are not clearly untimely, dismissal is not appropriate. After all, "[f]ailure to timely file an administrative charge is an affirmative defense." *Laouini v. CLM Freight Lines, Inc.*, 586 F.3d 473, 475 (7th Cir. 2009). "And affirmative defenses cannot form the basis to dismiss unless the plaintiff's complaint pleads the plaintiff out of court." *Lu Aku v. Chi.*

*Bd. of Educ.*, 290 F.Supp.3d 852, 861 (N.D. Ill. 2017) (denying motion to dismiss on grounds that EEOC charge was untimely). Plaintiff's complaint does not clearly do so here.

Even if all allegations that Fidelity highlights were untimely, the Court finds the continuing violation doctrine applies here to the extent plaintiff's claims are based on a hostile work environment theory. In *Morgan*, the Supreme Court recognized the "continuing violation" doctrine specifically for hostile work environment claims, holding that "[a] charge alleging a hostile work environment claim…will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Morgan*, 536 U.S. at 122. In so holding, the Court distinguished between acts that underlie a hostile environment claim and "discrete acts," such as "termination, failure to promote, denial of transfer, or refusal to hire." *Id*. at 114. "The essence of a discrete act of discrimination is that it forms a separate actionable unlawful employment practice." *Lapka v. Chertoff*, 517 F.3d 974, 982 (7th Cir. 2008) (citing *Morgan*, 536 U.S. at 101). As such, a claim based on a discrete act must be brought within the statutory period. Hostile environment claims, on the other hand, "are based on the cumulative effect of individual acts." *Id*. at 115. Each individual act "may not be actionable on its own," and together, they form a *single*, actionable unlawful employment practice. *Id*. Because these acts would amount to a single Title VII violation, the Court may consider untimely allegations, so long as they are all related and at least one act occurred within the statutory period.

Plaintiff alleges a hostile work environment existed from 2016 well into 2017, i.e., well into the statutory period. (*See* ECF No. 16 at ¶¶ 29, 30-34.) For example, as detailed above, plaintiff specifically alleges that Bennett made a racially harassing comment about plaintiff and his girlfriend in February 2017. (*See id.* at ¶ 30.). This allegation falls within the statutory period and is clearly similar to the type of earlier conduct that plaintiff alleges created a hostile work

6

environment. Thus, because at least one allegation is timely, none of the allegations supporting the claim are time-barred at this stage. *Morgan*, 536 U.S. at 117; *see also Outley v. City of Chi.*, No. 17 C 8633. 2019 WL 4261202, at *6–7 (N.D. Ill. Sept. 9, 2019) (applying continuing violation doctrine to Title VII hostile work claim and denying motion to dismiss); *Betts v. Option Care Enters., Inc.*, No. 18 C 4023, 2019 WL 193914, at *8 (N.D. Ill. Jan. 15, 2019) (citing supervisor's sexually harassing comments and conduct and employer's imposition of unfavorable work goals and office conditions as supporting a single hostile work environment claim and denying motion to dismiss).³

## II.    Failure to State a Claim

Next, Fidelity argues that plaintiff fails to plausibly allege his discrimination claims. More specifically, Fidelity argues that plaintiff fails to plausibly allege a hostile work environment based on race, sex or religion. The Court disagrees.

As a preliminary matter, in ruling on the instant motion, the Court views plaintiff's allegations of harassment collectively in determining whether the plaintiff plausibly states a claim for a hostile work environment. In arguing to dismiss Counts I through III, Fidelity urges the Court to view the alleged harassment relating to each specific protected characteristic—race, sex, religion—in isolation. (ECF No. 24 at 8-9; ECF No. 32 at 3.) Plaintiff appears to respond that the allegations of harassment, when viewed in totality, support a single, hostile work environment. (Response, at 5-6.) In the past, this Court has declined to require a plaintiff to state separate hostile work environment claims for each protected characteristic where the alleged harassment targets

---

³ As an additional note, Fidelity fails to cite—and the Court fails to find—any relevant decision which declines to apply the continuing violation doctrine in the context of a motion to dismiss. Instead, the cases cited by the parties address motions for summary judgment, where the courts had the benefit of a complete factual record. *See Boebel v. Combined Ins. Co. of America*, 2004 WL144135, at * (N.D. Ill. Jan. 16, 2004); *see also Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 727 (7th Cir. 2004) (declining to consider untimely allegations that occurred three years prior to the one timely allegation).

multiple characteristics. *See Masud v. Rohr-Grove Motors, Inc.*, No. 13 C 6419, 2015 WL 5950712, at *4 (N.D. Ill. Oct. 13, 2015). Although the Court has not found any controlling Seventh Circuit decision on point, other courts have taken a similar approach on this issue. *See e.g., Shazor v. Prof'l Transit Mgmt.*, 744 F.3d 948, 958 (6th Cir. 2014) (rejecting dissection of hostile work environment by characteristic and observing "the realities of the workplace, let alone the purpose of Title VII, will not allow such an artificial approach"); *see also Hafford v. Seidner,* 183 F.3d 506, 514-15 (6th Cir. 1999) (holding a plaintiff could rely on evidence of religious harassment to buttress his claim for racial harassment, even though the religious harassment claim could not survive independently); *Lam v. Univ. of Haw.*, 40 F.3d 1551, 1562 (9th Cir. 1994) (collecting cases on issue and stating "where two bases for discrimination exist, they cannot be neatly reduced to distinct components"). True, plaintiff does separate Counts I through III by protected characteristic, and when viewed on their own, these Counts—particularly Count III alleging religious discrimination—may lack the factual support required to survive Fidelity's motion to dismiss. However, the First Amended Complaint, taken as a whole, complains of a single hostile work environment, and plaintiff seeks the same relief for all three counts. (ECF No. 19 at ¶¶ 48, 55, 63.) Therefore, the Court finds it appropriate to view the allegations collectively in assessing whether plaintiff states a hostile work environment claim.

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). An employer may be liable for discrimination under Title VII if an employee is subject to a hostile work environment based on any of the characteristics enumerated by the statute. *Mason v. S. Ill. Univ. at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000). To prevail on a hostile work environment

claim, an employee must show that (1) he was subject to unwelcome harassment, (2) the harassment was based on a protected characteristic, (3) the harassment was so severe or pervasive as to alter the conditions of the employee's environment and create a hostile or abusive working environment, and (4) there is a basis for employer liability. *See Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 833–34 (7th Cir. 2015). "To rise to the level of a hostile work environment, conduct must be sufficiently severe or pervasive to alter the conditions of employment such that it creates an *abusive* relationship." *Id.* at 834 (emphasis in original). Put another way, "although a workplace need not be 'hellish' to constitute a hostile work environment, a hostile work environment must be so pervaded by discrimination that the terms and conditions of employment are altered." *Alamo v. Bliss*, 864 F.3d 541, 550 (7th Cir. 2017) (citations and quotations omitted).

Fidelity argues that plaintiff fails to sufficiently allege facts supporting the second and third elements. (ECF No. 24 at 6-11.) Regarding the second element, Fidelity argues that plaintiff "fails to allege that any harassment was *based on* discriminatory animus." (ECF No. 24 at 7; *see also* ECF No. 32 at 2.) However, plaintiff does allege that the harassment was "based on his race, sex, and religion." (ECF No. 19 at ¶ 21.) Further, at the pleading stage, one could reasonably infer from the specific examples of harassment offered by plaintiff that Bennett's conduct towards Plaintiff was because of plaintiff's race, sex, or religion. (*Id.* at ¶¶ 21, 23, 29-30.) As such, Plaintiff has adequately alleged facts supporting the second element.

Regarding the third element, Fidelity argues that plaintiff fails to plausibly allege that the harassment was so severe or pervasive as to alter conditions of plaintiff's employment and create a hostile work environment. (ECF No. 32 at 3.) In showing harassment was sufficiently severe or pervasive, plaintiff must show that the harassment was both objectively and subjectively offensive.

9

*See Cole v. Bd, of Trs. of N. Ill. Univ.*, 838 F.3d 888, 896 n. 6 (7th Cir. 2016) (explaining that the "objectively and subjectively offensive" inquiry is sometimes analyzed as the first element of a hostile work environment claim). "In determining whether a workplace is objectively hostile," the Court must consider "the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Alamo*, 864 F.3d at 549–50 (citation and quotations omitted). "[T]here is neither a threshold 'magic number' of harassing incidents that gives rise…to liability as a matter of law nor a number of incidents below which a plaintiff fails as a matter of law to state a claim." *Rodgers v. W.-S. Life Ins. Co.*, 12 F.3d 668, 674–76 (7th Cir. 1993) (finding an actionable hostile work environment when supervisors and employees referred to an employee by a racial slur between five and ten times); *see also Savoy v. BMW of N. Am., LLC*, 313 F. Supp. 3d 907, 915-16 (N.D. Ill. 2018) (also noting there is no threshold "magic number" of incidents required and observing "a severe episode that occurs as rarely as once and a relentless pattern of lesser harassment both may violate Title VII").

Here, plaintiff alleges that from 2016 through 2017, he was subjected to Bennett's harassment. (ECF No. 19 at ¶¶ 21, 29.) Plaintiff offers multiple examples of this alleged harassment, including but not limited to: (1) Bennett's use of "offensive racial slurs" including "the repeated use of the word 'cracker'"; (2) Bennett's remark that plaintiff "could not handle a strong independent black woman" and that plaintiff's girlfriend should meet Bennett's son when she and plaintiff broke up; (3) Bennett's "unwelcome comments about Hispanic people…and how they all need to go back to Mexico and learn English before coming here;" (4) Bennett directing plaintiff to look at her legs and asking if they were "sexy"; (5) Bennett's repeated sexually explicit

stories about "her and her husband being drunk and naked at home, engaged in sexual activity"; (6) Bennett's comments about her husband's "old sperm"; and (7) Bennett's repeated questions about how plaintiff could be Catholic in light of Bennett's view that "all catholic priests are child predators." (*Id.* at ¶¶ 21, 30.) Plaintiff also alleges that his manager, Fusz, indicated to plaintiff that he was "in a hostile work environment" after plaintiff told Fusz about Bennett's conduct. (*Id.* at ¶ 23) Further, plaintiff alleges that after reporting the harassment to management, nothing was done to stop the harassment. (*Id.* at 22-28.) Rather, Bennett found out that plaintiff reported her, and Bennett told plaintiff that her son "wanted to find out who started all this trouble and beat their ass." (*Id*. at 27.)

Taking all these allegations as true and drawing all reasonable inferences therefrom, the Court finds plaintiff plausibly alleges a hostile work environment. "[I]t is premature at the pleadings stage to conclude just how abusive [plaintiff's] work environment was," but it is plausible that racially-charged comments and slurs, sexually-explicit comments, insulting religious comments, and threatening remarks could transform plaintiff's work place into an abusive environment. *See Huri*, 804 F.3d at 834; *see also Gaston v. Bd. of Ed. of the City of Chi.*, No. 17 C 1024, 2017 WL 3234375, at *3 (N.D. Ill. July 31, 2017) (finding a teacher alleged a hostile work environment based on principal's verbal insults, improper work assignments, and negative performance reviews); *Moses v. Sloan Valve Co*., No. 16 C 9972, 2017 WL 3838040, at *3 (N.D. Ill. Sept. 1, 2017) (finding allegations that plaintiff endured racially-tinged comments and was accused of stealing to "have the requisite severity and frequency to state a claim, at least at the pleading stage"); *Savoy*, 313 F. Supp. 3d at 916 (denying motion to dismiss). Admittedly, this is a close call, but "[t]he pleading standards in Title VII cases are, of course, different from the evidentiary burden a plaintiff must subsequently meet." *Huri*, 804 F.3d at 834. Critically,

11

plaintiff explicitly states the specific examples he provides are not an exhaustive list of incidents, but rather are indicative of the type of harassment he endured from 2016 through 2017. (ECF No. 19 at ¶ 21.) "It may be that [plaintiff], once discovery has run its course, cannot produce evidence to survive summary judgment. But that question can safely be postponed to another day." *Id*.

As a final note, Fidelity also argues plaintiff fails to adequately allege the severe or pervasive prong of a hostile work environment because he fails to allege "how any alleged harassment altered the terms and conditions of his employment." (ECF No. 32 at 2; *see also* ECF No. 24 at 7.) In support of its argument, Fidelity points out that plaintiff admits to performing his work satisfactorily at all times and to being promoted when the alleged harassment was taking place. (ECF No. 24, at 7.) Fidelity's argument is not well-taken. Plaintiff "need not show that a campaign of harassment interfered with [his] work performance in order to establish a violation of Title VII." *Dey v. Colt Const. & Dev. Co.*, 28 F.3d 1446, 1455 (7th Cir. 1994) (observing that hostile environment claim can exist "even where job performance is not tangibly affected"). Indeed, "the criterion is not what a reasonable…employee is capable of enduring, but whether the offensive acts alter the conditions of employment." *Id*. (quoting *King v. Hillen*, 21 F.3d 1572, 1583 (Fed.Cir. 1994)). As explained above, plaintiff has sufficiently alleged that Bennett's harassment altered the conditions of his employment, and plaintiff is not required to show his work suffered as a result of the harassment.[4]

---

[4] In addition to whether plaintiff stated a claim under a hostile work environment theory, the Parties also dispute whether plaintiff states standard claims of discrimination in Counts I through III. Because the Court finds that plaintiff plausibly alleges a hostile work environment, the Court need not decide at this time whether plaintiff states claims under alternative theories.

## **CONCLUSION**

For the reasons set forth above, Fidelity's Motion to Dismiss Counts I through III of Plaintiff's First Amended Complaint [23] is denied.

**SO ORDERED.**                                              **ENTERED: November 15, 2019**

                                                                            **HON. JORGE ALONSO**
                                                                            **United States District Judge**